**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JeanMarie Magnotti,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-22-01503-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff JeanMarie Magnotti's ("Plaintiff") appeal from the Commissioner of Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits. (Doc. 1). Plaintiff filed her opening brief on April 10, 2023, (Doc. 18), Defendant responded on July 6, 2023, (Doc. 22), and Plaintiff filed a reply, (Doc. 23). The Court now rules.

**I.　BACKGROUND**

The issues presented in this appeal are the following: (1) whether the ALJ erred in discounting Plaintiff's symptom testimony;[1] and (2) whether the ALJ failed to support his residual functional capacity ("RFC") determination with substantial evidence.

**A. Factual Overview**

Plaintiff filed the current application for disability benefits on August 28, 2020, with an alleged disability onset date of January 10, 2019. (Doc. 18 at 2). On March 30, 2022, an

---

[1] Plaintiff's opening brief states that the ALJ "failed to perform a proper analysis of Plaintiff's symptoms." (Doc. 18 at 2). Based on Plaintiff's arguments, the Court characterizes this argument as one which asserts that the ALJ erred in discounting Plaintiff's testimony.

administrative law judge ("ALJ") issued a decision finding that Plaintiff was not disabled during the relevant period—January 10, 2019, to December 31, 2019, Plaintiff's date last insured. (*See* Doc. 17-1 at 25–35).

Plaintiff has previously filed an application for disability benefits on April 14, 2016, for a period of disability beginning on July 1, 2015. *See Magnotti v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00760-PHX-DWL, 2021 WL 4025959, at \*1 (D. Ariz. Sept. 3, 2021). The ALJ in the prior case found that Plaintiff had the same severe impairments as those listed in the present ALJ decision. (Case No. CV-20-00760-PHX-DWL, Doc. 18-3 at 16). However, the prior ALJ found Plaintiff not disabled from July 1, 2015, to January 14, 2019 (the date of the ALJ's decision), and District Judge Dominic Lanza affirmed. *See generally Magnotti*, 2021 WL 4025959.

### B. The SSA's Five-Step Evaluation

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period

of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

At step three, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "[RFC] based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See*

20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

**C. The ALJ's Application of the Five-Step Evaluation Process**

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. (Doc. 17-1 at 28).

At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "degenerative disc disease, fibromyalgia, obesity, essential hypertension and diabetes mellitus." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 30). Thus, the ALJ made an RFC determination and found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasionally kneel, stoop, crouch and crawl and can frequently balance. She should avoid concentrated exposure to extreme cold and vibration and she should not be exposed to hazards such as hazardous machinery and unprotected heights.

(*Id.* at 31).

At step four, the ALJ found that through the date last insured, Plaintiff "was capable of performing past relevant work as an office manager," as that work "did not require the performance of work-related activities precluded by [Plaintiff's RFC]." (*Id.* at 34).

Because the ALJ found Plaintiff to be capable of performing past relevant work, the ALJ did not proceed to step five. The ALJ found that Plaintiff was not under a disability during the relevant time period. (*Id.*).

**II.    LEGAL STANDARD**

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more than

a mere scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (internal citation omitted). In other words, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the" ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d

871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### III. DISCUSSION

The Court first notes that, as discussed above, Plaintiff has previously filed and appealed the denial of an application for disability benefits based on the same severe impairments. In the ALJ decision at issue here, the ALJ also noted the previous case; however, the ALJ erroneously stated that the previous case was not yet final because the appeal was still pending. At the time the ALJ rendered his decision (March 30, 2022), District Judge Dominic Lanza had affirmed the prior ALJ's finding that Plaintiff was not disabled from July 1, 2015, through the date of the ALJ decision, January 14, 2019, and no appeal to the Ninth Circuit Court of Appeals ("Ninth Circuit") was filed. *See generally Magnotti*, 2021 WL 402595. In the present appeal, Plaintiff alleges a disability onset date of January 10, 2019—four days before the date of the prior ALJ decision finding no disability. However, neither party argues that the overlap in time impacts this appeal and this Court's review of the present ALJ decision. Accordingly, the Court will not consider collateral estoppel or other deference as to whether Plaintiff was disabled as of the January 10, 2019, date because neither party argued it. Moreover, for the reasons detailed below, this Court affirms the ALJ decision on the merits. As such, the result would be the same.

**A. Whether the ALJ Properly Discounted Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ failed to apply the proper two-step analysis in evaluating Plaintiff's symptoms. (Doc. 18 at 15). Plaintiff asserts that the ALJ "fail[ed] to identify any evidence that lacks consistency with Plaintiff's claim." (*Id.*). Plaintiff further argues that the ALJ instead "appear[ed] to focus almost exclusively on his own interpretation of the medical evidence." (*Id.* at 16). Specifically, Plaintiff asserts that the ALJ "conflat[ed] a lack of emergency room visits with a lack of disabling limitations or else implying that it represents a conservative treatment history." (*Id.* at 17). Plaintiff further states that the medical history shows that Plaintiff's treatment history is "extensive," and that "[t]here is no suggestion of greater levels of treatment that she could pursue at this

point." (*Id.* at 17–18).

Defendant argues that the ALJ reasonably discounted Plaintiff's symptom testimony and adequately accounted for her testimony in his RFC determination. (Doc. 22 at 6). Specifically, Defendant asserts that the ALJ appropriately considered the effectiveness of Plaintiff's treatment, pointed to objective evidence contradicting Plaintiff's testimony, and included ample limitations in the RFC determination based on his consideration of Plaintiff's testimony. (*Id.* at 6–9).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)

(quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Here, the ALJ first noted that Plaintiff medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Doc. 17-1 at 32). However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence in the record. (*Id.*). The ALJ further stated that records post-dating Plaintiff's date last insured were considered, but were not the primary focus, as such records "do not provide significant probative value" because "they are not relevant to the period of disability at issue." (*Id.*).

The ALJ cited to several pieces of evidence from the relevant time period, including the following: various magnetic resonance imaging ("MRI") results finding "mild to moderate" abnormalities, a February 2019 imaging of Plaintiff's right hip that showed no evidence of osseous abnormality, and a provider describing Plaintiff's hypertension as "chronic but stable on Lisinopril." (*Id.* at 32–33). The ALJ further noted that Plaintiff has repeatedly presented with "negative straight leg raise, minimal tenderness to palpation, and routinely normal gait." (*Id.* at 33).

The Court acknowledges Plaintiff's arguments as to whether various citations to the medical record in the ALJ decision support the ALJ's inferences in his RFC determination. Plaintiff took issue specifically with several pieces of evidence to which the ALJ cited to support his finding that Plaintiff "has presented on multiple visits to providers with normal gait, negative straight leg raise, mild or no pain with normal range of motion, and without the use of an assistive device." (Doc. 17-1 at 32). The Court finds that, while there is some minor discrepancy between the ALJ's statement and the evidence to which the ALJ cites,[2]

---

[2] For example, the ALJ indeed cited to a medical record that mentioned that Plaintiff ambulated with a cane. (*See* Doc. 17-4 at 227). However, upon inspection of the remainder of the ALJ's citations, the Court finds numerous instances in which Plaintiff ambulated with no assistive device. Moreover, in his decision, the ALJ acknowledged Plaintiff's occasional use of a cane and nonetheless came to the same RFC determination. (Doc. 17-1 at 32). This Court does not engage in mere second-guessing of the ALJ's determination. *See Tommasetti*, 533 F.3d at 1039 (citation omitted).

the evidence to which the ALJ cites overall supports the ALJ's statement, especially the evidence from the relevant period. (*See, e.g.*, Doc. 17-4 at 20, 27, 75). Moreover, nearly all of the evidence with which Plaintiff takes issue was collected after the relevant period—that is, after Plaintiff's date last insured. (*See, e.g.*, *id.* at 227, 249). Finally, much of the evidence with which Plaintiff takes issue concerns mental impairments that the ALJ did not find to be severe, and Plaintiff does not challenge the ALJ's findings as to which impairments are severe in her appeal. (*See, e.g.*, *id.* at 203–05). Altogether, the Court finds Plaintiff's arguments regarding the ALJ's specific citations to the evidence unavailing.[3]

The Court also addresses Plaintiff's argument that the ALJ has implicitly concluded that Plaintiff underwent conservative treatment through his statement that Plaintiff's emergency room visits were for ailments other than those he considered severe. The Court finds that the ALJ accurately reported the reasons for Plaintiff's emergency room visits; moreover, the ALJ did not "conflate" unrelated emergency room visits with a lack of disabling impairments. Instead, the ALJ cited to various medical records that show such a lack of disabling impairments and further noted that Plaintiff had not visited the emergency room for any reasons related to her severe impairments. As such, the Court also finds this argument unavailing.

Based on the evidence the ALJ discussed in his decision, this Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective testimony, especially given the limitations that the ALJ nonetheless imposed on Plaintiff's RFC. The Court finds no reversible error on this basis.

### B. Whether the ALJ Provided a Valid RFC Determination

Plaintiff also argues generally that the ALJ's RFC determination was not supported by substantial evidence because the RFC was "unsupported by any medical opinions" and "fail[ed] to confront evidence that contradicted [the ALJ's] conclusions." (Doc. 18 at 7). Plaintiff asserts that the ALJ provided just "a terse summary of the evidence followed by

---

[3] The ALJ relied on the aforementioned evidence when discussing his decision to discount Plaintiff's subjective testimony. Thus, the Court discusses it here. The Court's conclusion regarding this argument applies with equal force in Section III.B., *infra* (the heading under which Plaintiff makes this argument in her opening brief).

the conclusory statement" that the evidence does not require a finding of disability. (*Id.* at 8). Plaintiff states that the ALJ instead "provided an RFC that was identical to the prior unfavorable decision despite new evidence of worsening symptoms." (*Id.*). Plaintiff further asserts that the ALJ rendered his RFC determination "without the benefit of medical opinion evidence," which is reversible error because "the ALJ, as a layperson, was not qualified" to evaluate various pieces of medical evidence. (*Id.* at 9).

Plaintiff additionally argues that the ALJ's treatment of the medical evidence was "highly flawed," and that the ALJ "misrepresented" the evidence in his analysis. (*Id.* at 11). Plaintiff states that some of the supporting evidence to which the ALJ cites does not actually stand for the propositions the ALJ asserts. (*Id.*). Moreover, Plaintiff argues, the ALJ's citation to some normal findings does not adequately explain why the normal findings were more probative than other evidence. (*Id.* at 12). Specifically, Plaintiff notes that normal results can be consistent with debilitating fibromyalgia, that the ALJ failed to account for Plaintiff's limitations in using her hands, and that the ALJ did not explain why he did not include a sit/stand option or account for time off task in the RFC even after developing the record with the vocational expert ("VE") on these points. (*Id.* at 13–15).

Defendant argues that substantial evidence, to which the ALJ cited, indeed does support the ALJ's RFC determination. (Doc. 22 at 2). Defendant points to the various pieces of evidence in the record to which the ALJ cited, pointing out that "Plaintiff regularly presented with normal gait, negative straight leg raise, mild or no pain with normal range of motion, and without the use of an assistive device." (*Id.* at 3). Defendant also asserts that the ALJ's RFC determination was much more restrictive than what the state agency physicians found in their review, as the agency physicians found "insufficient evidence" to evaluate any physical impairment during the relevant period. (*Id.* at 4). Finally, Defendant points out that "the existence of an alternative interpretation of the record does not show that the ALJ erred," so Plaintiff's alternative interpretation of the medical evidence is insufficient for this Court to reverse. (*Id.* at 5).

The Court first incorporates its above discussion of Plaintiff's arguments regarding

the alleged inconsistencies in the evidence to which the ALJ cites, and the Court reiterates its conclusion that such arguments are unavailing. To that end, the Court also notes that the ALJ cited a significant amount of objective medical evidence supporting his RFC determination and correctly explained that the evidence from the relevant period was more probative than evidence from outside of that period.[4]

Plaintiff focuses much of the remainder of her argument on the ALJ's failure to base his RFC determination on any medical opinion. However, as the ALJ noted, "[t]he consulting physicians found there was insufficient evidence to evaluate [Plaintiff's] application for disability benefits before the date last insured." (Doc. 17-1 at 34). Importantly, this indicates that the ALJ indeed sought consultative opinions on which to base his opinion; he bases his determination on the evidence available without a medical opinion simply because the consultative physicians found insufficient evidence to opine.[5] The Court further notes that Plaintiff does not point to any medical opinions which the ALJ should have considered. *See Santiago v. Colvin*, No. 2:13-cv-2174-EFB, 2015 WL 1469290, at *4 (E.D. Cal. Mar. 30, 2015) (finding that where there was no evidence that amounted to a medical opinion under 20 C.F.R. § 404.1527(a)(2), "there was simply no opinion to reject," and the ALJ did not err when he did not base his determination on medical opinions). Thus, the Court finds this argument unavailing.[6]

---

[4] Plaintiff also points specifically to a Ninth Circuit opinion which stated that "mostly normal results" can be "perfectly consistent with debilitating fibromyalgia." *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017). However, the Ninth Circuit went on to state that "fibromyalgia is diagnosed, in part, by evidence showing that another condition does not account for a patient's symptoms," and that it was error for the ALJ to discount fibromyalgia because of the "lack of 'objective findings' supporting [the claimant's] claims of severe pain." *Id.* Here, by contrast, the ALJ acknowledged limitations posed by Plaintiff's fibromyalgia, limited the RFC accordingly, pointed to *contradictory* (not lack of) evidence, and further pointed to the other conditions accounting for Plaintiff's symptoms. (Doc. 17-1 at 32–33).

[5] Although not controlling, the Court additionally places some significance on the ALJ's efforts to limit Plaintiff's RFC notwithstanding the consultative doctors finding insufficient evidence.

[6] The Court also addresses Plaintiff's extensive citation to *Jatto v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00604-PHX-DLR, 2022 WL 4367600 (D. Ariz. Sept. 21, 2022). In *Jatto*, the claimant presented four medical experts' opinions, which the ALJ discounted "because they gave opinions based on an incomplete medical record, which was ultimately presented in its entirety at the hearing." *Jatto*, 2022 WL 4367600 at *2. This case is inapposite—here, no medical opinions have been presented, and Plaintiff does not argue that the record was incomplete at the time the ALJ conducted the hearing.

In sum, considering the objective evidence to which the ALJ cited from among the limited evidence from the relevant time period, and Plaintiff's RFC being limited according to her symptoms, the Court finds that substantial evidence supports the ALJ's RFC determination. Thus, there is no reversible error on this ground.

## IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 5th day of January, 2024.

James A. Teilborg
Senior United States District Judge